**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

PHELAN HOLDINGS, INC.,

    Plaintiff,

v.                                  CASE NO: 8:15-CV-2294-T-30TBM

RARE HOSPITALITY MANAGEMENT,
INC.,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. 28), Plaintiff's Response in Opposition (Dkt. 43), and Defendant's Reply (Dkt. 48). Upon review of the motion, response, reply, record evidence, and being otherwise advised in the premises, the Court concludes that Defendant's motion for summary judgment should be granted on all of Plaintiff's claims.[1]

## BACKGROUND

This is a trademark infringement action between two casual dining restaurants. Specifically, Plaintiff Phelan Holdings, Inc. alleges that Defendant RARE Hospitality Management, Inc.'s use of the slogan "You Can't Fake Steak" in its advertising for its

---

[1] Defendant's Motions to Strike Plaintiff's Experts Rhonda Harper and Bruce Silverman (Dkts. 33, 34) will be denied as moot because Harper's and Silverman's opinions and testimony do not create a genuine issue of fact for the jury.

LongHorn Steakhouse restaurant chain is confusingly similar to Phelan's Pinchers Crab Shack's restaurant's slogan "You Can't Fake Fresh," to the extent that customer confusion regarding the source, sponsorship, or origin of the parties' restaurants is likely to occur. The relevant undisputed facts follow.

Plaintiff Phelan Holdings, Inc., a family-owned company, owns and operates Pinchers Crab Shack, a chain of twelve casual seafood restaurants located in Southwest Florida. Pinchers Crab Shack's style and ambiance were designed to look like "an old seafood shack you'd find resting along the Gulf coast." Pinchers Crab Shacks are bright, open air restaurants, painted in pastel colors. The walls are adorned with beachy, Florida-themed decorations, such as driftwood signs, mounted fish, large oars, and Caribbean artifacts.

As its name suggests, Pinchers Crab Shacks are known as seafood restaurants. Approximately 70% of the food available on its menu is seafood, and its advertising focuses on its seafood offerings. The Pinchers Crab Shack chain is "obsessed" with the freshness of its seafood, and, in furtherance of that objective, Phelan obtained an ownership interest in fish purveyor Island Crab Company to supply fresh seafood to its restaurants. Phelan also operates a farm in Florida that supplies fresh vegetables to its restaurants.

In 2004, Phelan developed the advertising slogan "You Can't Fake Fresh" to make clear to consumers that the focus of Pinchers Crab Shacks is on the freshness of its food. Phelan registered the "You Can't Fake Fresh" mark with the United States Patent and Trademark Office (USPTO) on February 16, 2010.

Pinchers Crab Shack uses its "You Can't Fake Fresh" slogan in approximately 90% of its advertising, which consists primarily of billboards, print media, such as hotel pamphlets and newspapers, and online through Pinchers Crab Shack's website and social media outlets. Pinchers also advertises on television and on the radio in Southwest Florida, but to a much lesser extent.  In every advertisement that uses the "You Can't Fake Fresh" slogan, the Pinchers Crab Shack name is also prominently displayed and/or mentioned.  Pinchers Crab Shack's customers are mostly tourists to the Southwest Florida region.

LongHorn Steakhouse restaurants are a chain of Western-themed casual steakhouse restaurants owned and operated by Defendant RARE Hospitality Management, Inc., an Orlando-based subsidiary of Darden Restaurants, Inc.  The first LongHorn Steakhouse opened in 1981 in Atlanta, Georgia, and currently there are over 481 LongHorn Steakhouse restaurants located in 41 states.  LongHorn Steakhouses are typically large, stand-alone restaurants located in suburban areas, and patronized most frequently by locals.

The first LongHorn was designed as a Texas-style roadhouse.  The atmosphere was relaxed: peanuts were provided at each table, and typically peanut shells were thrown on the floor.  As the LongHorn brand began to expand, RARE decided to transition its image from that of a "roadhouse" to that of a steakhouse with the look and feel of a rancher's home.  In that regard, LongHorn Steakhouses are designed using dark, warm colors, and "cowboy" art such as mounted skulls, spurs, and paintings of Western scenes.  Its menu is still heavily focused on its steak offerings, which account for roughly 60-65% of its food sales.

LongHorn Steakhouse's primary competitors are other casual steakhouses, with Texas Roadhouse and Outback Steakhouse being the chain's biggest competition.

In 2012, RARE started working with Grey Advertising to develop a new, bold marketing campaign for the brand. In those meetings, Grey first presented the slogan "You Can't Fake Bold," but through collaborative discussions RARE and Grey coined the slogan "You Can't Fake Steak," which was chosen as the new advertising campaign to portray the brand's bold attitude. Thereafter in 2012, RARE started using the slogan "You Can't Fake Steak" to promote its LongHorn Steakhouse restaurants. RARE submitted an application with the USPTO to federally register this mark on May 3, 2015, and was granted federal registration for the mark on August 4, 2015. LongHorn Steakhouse's "You Can't Fake Steak" mark is used primarily in television commercials, but also appears on the company's website, social media posts, gift cards, coupons, and occasionally on billboards. In all of the advertisements that use the slogan "You Can't Fake Steak," the "LongHorn" name is also prominently displayed.

On October 1, 2015, Phelan filed the instant lawsuit against RARE, asserting claims for: (1) Federal trademark infringement/unfair competition/false designation of origin/false description of fact; (2) trademark infringement/unfair competition/false designation of origin/false representation under Florida law; (3) violation of the FDUTPA; (4) injury to business reputation and dilution under Florida law; and (5) cancellation of RARE's federally registered trademark for "You Can't Fake Steak."

The record is undisputed that there is no actual evidence of a consumer being confused by RARE's use of "You Can't Fake Steak" to promote its LongHorn Steakhouses in light of Phelan's use of "You Can't Fake Fresh" to promote its Pinchers Crab Shacks. And the Court notes the USPTO found that the parties' marks were sufficiently dissimilar such that RARE's "You Can't Fake Steak" mark was granted a federal trademark registration even though Phelan's "You Can't Fake Fresh" mark was already federally registered.

RARE now moves for summary judgment on all of Phelan's infringement claims, asserting that the record is devoid of any evidence of a likelihood of consumer confusion. With respect to Phelan's dilution claim, RARE contends that the record is bereft of any credible evidence that Plaintiff's "You Can't Fake Fresh" mark has achieved the level of notoriety necessary to sustain its dilution claim. The Court now turns to the relevant law.

## **SUMMARY JUDGMENT STANDARD**

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine

the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## **DISCUSSION**

**A.     Phelan's Trademark Infringement Claims**

Phelan's response to RARE's summary judgment motion reflects that Phelan is dropping or abandoning any forward confusion claim and is asserting its trademark

infringement claims solely under a theory of reverse confusion.[2] As such, the Court limits its analysis to a reverse confusion claim.[3]

In a traditional infringement case, the plaintiff contends that the defendant adopted a confusingly similar mark in order to free-ride on the plaintiff's goodwill and reputation. *See Immuno Vital, Inc. v. Golden Sun, Inc.,* 49 F. Supp. 2d 1344, 1351-52 (S.D. Fla. 1997) (describing types of infringement). Here, Phelan is claiming "reverse confusion," which occurs when a much larger defendant "saturates the market with a trademark similar or identical to that of a smaller, senior user." *Sands, Taylor & Wood Co. v. Quaker Oats Co.,* 978 F.2d 947, 957 (7th Cir. 1992). In reverse confusion, the mark's rightful owner is injured because the public assumes that the owner is somehow affiliated with the larger company or that the owner is actually the infringer. *Id.* "The result is that the senior user loses the value of the trademark[.]" *Id.*

Although it does not appear that the Eleventh Circuit has directly addressed reverse confusion, "the reverse confusion doctrine is presumed to apply in the Eleventh Circuit" under binding Fifth Circuit precedent. *Immuno Vital,* 49 F. Supp. 2d at 1352 (citing *Capital Films Corp. v. Charles Fries Prod., Inc.*, 628 F.2d 387, 393 (5th Cir.1980)). Other circuits have recognized the doctrine of reverse confusion under the Lanham Act and state trademark

---

[2] Indeed, throughout its response Phelan states that this is a case of reverse confusion and that "[n]o one confuses a LongHorn Steakhouse with Pinchers." (Dkt. 43).

[3] However, based on the Court's review of the record evidence, RARE would be entitled to summary judgment in its favor on any forward confusion claim for the reasons stated in RARE's motion (Dkt. 28).

claims. *See Stuart J. Kaufman, M.D. & Assocs., P.A. v. Bausch & Lomb Inc.*, No. 8:13-CV-461-T-33EAJ, 2013 WL 6154166, at *6-*7 (M.D. Fla. July 25, 2013), *adopted by* 2013 WL 12123679 (M.D. Fla. Sep. 4, 2013) (citing cases).

A plaintiff alleging a reverse confusion case must still establish a likelihood of confusion. *See Uber Promotions, Inc. v. Uber Techs., Inc.*, 162 F. Supp. 3d 1253, 1265 (N.D. Fla. 2016) (applying the Eleventh Circuit's seven-factor test in a reverse confusion case). In the Eleventh Circuit, seven factors are analyzed to determine likelihood of confusion: (1) strength of the mark; (2) similarity of the marks; (3) similarity of the products associated with the marks; (4) similarity of the parties' retail outlets and customers; (5) similarity of advertising methods; (6) defendant's intent; and (7) actual confusion. *See Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 934-35 (11th Cir. 2010).[4] "Of these [factors], the [strength] of mark and the evidence of actual confusion are the most important." *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1239 (11th Cir. 2008) (citation and quotation omitted).

Assessing the likelihood of confusion requires "more than the mechanistic summation of the number of factors on each side[.]" *Custom Mfg. & Eng'g*, 508 F.3d at 649 (citations omitted). "Although likelihood of confusion is a question of fact, it may be decided as a matter of law." *Tana v. Dantanna's,* 611 F.3d 767, 775 (11th Cir. 2010). "And [the

---

[4] Phelan's state law claims for trademark infringement and unfair competition are governed by the same standard. *See Custom Mfg & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 652 (11th Cir. 2007) (citing *Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1521 (11th Cir. 1991)).

Eleventh] circuit has routinely 'weighed' the likelihood-of-confusion factors on summary judgment." *Id.* (citing *Welding Servs., Inc. v. Forman,* 509 F.3d 1351, 1361 (11th Cir. 2007) (explaining that "[o]verwhelming visual dissimilarity can defeat an infringement claim, even where the other six factors all *weigh* in favor of the plaintiff") (emphasis added); *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC,* 369 F.3d 1197, 1208 & n. 12 (11th Cir. 2004) (holding that no reasonable jury could find that the two logos are confusingly similar because although "the second factor *weighs* in favor of FBD," "the remaining six factors all *weigh* in favor of DDI," and "the lack of visual similarity between the two designs is overwhelming") (emphasis added)).

"The likelihood-of-confusion multifactor test presupposes that various factors will point in opposing directions. The role of the court in reviewing a motion for summary judgment is to determine the ultimate question of whether, in light of the evidence as a whole, there is sufficient proof of a likelihood of confusion to warrant a trial of the issue." *Dantanna's,* 611 F.3d at 775.

As detailed below, viewing the likelihood-of-confusion factors as a whole and in a light most favorable to Phelan, the non-movant, there is minimal evidence of a likelihood of confusion between Phelan's and RARE's slogans aside from the initial similarity of the buzz phrase "You Can't Fake . . ." and the fact that they both provide casual restaurant services. Indeed, Phelan essentially concedes this point: "[n]o one confuses a LongHorn Steakhouse with a Pinchers." (Dkt. 43). Phelan's response largely argues that a determination of a

likelihood of customer confusion is an issue of fact for the jury to decide. *Dantanna's* holds otherwise. The Court now addresses the seven factors.

### 1. The Strength of the Mark

It is undisputed that Phelan's "You Can't Fake Fresh" mark has been in use for two decades. It has been registered since February 2010, and the mark is incontestable, which entitles it to "strong protection" under Eleventh Circuit precedent. *See Caliber Auto. Liquidators*, 605 F.3d at 939; *see also Dieter v. B&H Indus. of S.W. Fla.*, 880 F.2d 322, 329 (11th Cir. 1989) (noting that "incontestable" marks are "presumed to be at least descriptive with secondary meaning, and therefore [] relatively strong.").

RARE points to evidence establishing that the number of third-party uses of marks that include the phrase "You Can't Fake . . .," including slogans using these terms in the food/restaurant industry, discounts the strength of a least this portion of the mark. The Court agrees that these terms weaken the mark to a certain extent. However, in light of the mark's presumptive strength, the Court concludes that this factor weighs in Phelan's favor.

### 2. Similarity of the Marks

"Similarity of appearance is determined on the basis of the total effect of the designation, rather than on a comparison of individual features." *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 260-61 (5th Cir. 1980). A court "must also consider the commercial impression created by the mark as a whole." *Id.* at 261 (collecting cases). "Stated differently, [i]n evaluating the similarity of marks, [the court] must consider the overall impression created by the marks, including a comparison of the appearance, sound

and meaning of the marks, as well as the manner in which they are displayed." *Wreal, LLC v. Amazon.com, Inc.*, No. 14-21385-CIV, 2015 WL 12550912, at *4 (S.D. Fla. Aug. 31, 2015), *aff'd*, 840 F.3d 1244 (11th Cir. 2016) (internal citation and quotation omitted).

Comparing the parties' marks in their entirety, the Court concludes that this factor weighs slightly in Phelan's favor. Both marks clearly incorporate the common buzz phrase "You Can't Fake . . .," however the last word of each mark, i.e., Fresh and Steak, is completely different with a different meaning. Moreover, the manner in which the parties' respective marks are used is different: customers do not encounter either the "You Can't Fake Fresh" mark without also encountering the Pinchers mark, or the "You Can't Fake Steak" mark without encountering the Longhorn mark. This lessens the likelihood of confusion.

With respect to this factor, Phelan argues that its linguistics expert, Ronald Butters, provides evidence that demonstrates that this factor "overwhelmingly favors Phelan" because the marks are similar from a linguistic point of view (Dkt. 43). Butters opines that "there is relatively little phonological material by which speakers may distinguish the marks," and explains how the marks are similar in sound and visually. But this analysis again primarily focuses on the first three words of the phrase, while ignoring the undisputed facts that the words "Fresh" and "Steak" are different and Phelan and RARE always provide their Pinchers and Longhorn marks (respectively) alongside the slogans. In other words, the "linguistic similarities" between the parties' respective marks is not dispositive because the Court must view the commercial impression created by the marks as a whole.

-11-

The Court concludes that this factor just slightly tips in Phelan's favor given the fact that the first three words of the slogan are the same.

### 3. Similarity of the Products Associated with the Marks

Regarding the third factor, "[t]he greater the similarity between the products and services the greater the likelihood of confusion." *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1507 (11th Cir. 1985). In *Dantanna's*, the Eleventh Circuit affirmed the district court's grant of summary judgment in the defendant's favor.[5] With respect to this factor, the Eleventh Circuit noted that the parties' goods and services were "strikingly dissimilar." 611 F.3d at 777-78 (stating that: "the only apparent commonality between the two restaurants is that they are both fine-dining establishments serving meat and fish.").

Here, as in *Dantanna's*, the parties' restaurants are similar only to the extent that they are both casual dining restaurants with a few overlapping menu items. Phelan's Pinchers Crab Shacks are seafood restaurants and RARE markets its LongHorn Steakhouses as steakhouse restaurants. Pinchers Crab Shacks are "Florida style," with a beachy decor and a pastel color palate. LongHorn Steakhouses have a rancher theme and are decorated with cowboy art and a warm color palate.

In response, Phelan admits that "LongHorn Steakhouse restaurants do not look like Pinchers restaurants and have different atmospheres." (Dkt. 43). Nonetheless, Phelan argues that this factor is immaterial because, in a reverse confusion case, the relevant inquiry is

---

[5] *Dantanna's* was a forward confusion case. However, the analysis is still helpful with respect to the Court's application of the seven-factor test.

whether the products are the kind that the public attributes to a single source. Even assuming for the sake of argument that this is the correct inquiry, Phelan points to no record evidence establishing that the parties' restaurants are the kind that the public would attribute to a single source. In other words, there is no evidence that a consumer hearing, seeing, or reading the two competing marks would believe that Pinchers Crab Shack and LongHorn Steakhouse are associated. To the contrary, the evidence reflects that the restaurants are completely different and Phelan's only defense is to emphasize the three shared words in the parties' slogans (i.e., "You Can't Fake . . .) to conclude that a customer listening to these slogans would assume that the parties' restaurants are related in some fashion.

Phelan's defense essentially goes to the second factor, not the third. Indeed, under Phelan's theory of reverse confusion, the inquiry would always weigh in its favor based on the marks' similarity. This would render the other six factors moot, which goes against the Eleventh Circuit's seven-factor test. Accordingly, the Court concludes that the third factor weighs strongly in favor of RARE because the two restaurants are "strikingly dissimilar." *Id.* at 778.

### 4. Similarity of the Parties' Retail Outlets and Customers

The fourth factor considers "where, how, and to whom the parties' products are sold." *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1339 (11th Cir. 1999). The record reflects that Pinchers Crab Shack's customers are tourists, while the majority of LongHorn Steakhouse restaurant's customers are locals, which weighs against a finding of similarity. *See e.g., Dantanna's*, 611 F.3d at 778 (two fine dining restaurants, one of which

catered to celebrities and another catering to sports enthusiasts, found to have dissimilar customers). However, the parties' restaurants, unlike the restaurants in *Dantanna's*, are geographically close, which weighs in favor of a finding of similarity to the extent that they broadly compete for casual diners in the same location. The Court concludes that this factor is neutral.

### 5.      Similarity of Advertising Methods

The record is undisputed that the majority of RARE's use of its "You Can't Fake Steak" mark to promote its LongHorn Steakhouse restaurants is through television commercial broadcast across most of the United States. In contrast, Phelan's use of its "You Can't Fake Fresh" mark to advertise Pinchers Crab Shack restaurants is primarily local, through billboard advertisements, hotel circulars, newspapers, and other print media. Phelan's national advertising is done through an email listserve and online through social media. Phelan's television advertising is limited to the Southwest Florida markets.

The record is also undisputed that the parties' websites are different and clearly relate to their respective restaurants, so that it would be clear to a consumer that the parties' restaurants are unrelated. The Court concludes that this factor favors RARE.

### 6.      RARE's Intent

It is unclear in the Eleventh Circuit whether intent remains a relevant factor in a reverse confusion case. *See Stuart J. Kaufman, M.D. & Assocs., P.A.*, 2013 WL 6154166, at *10 ("The standard for intent in reverse confusion cases is an open question in this circuit."). The record is devoid of any evidence that RARE adopted its "You Can't Fake

Steak" mark in bad faith. Thus, if intent remains relevant in reverse confusion cases, this factor weighs in RARE's favor because there is no evidence that RARE acted in bad faith or with the intent to force Phelan out of business.

### 7. Actual Confusion

The record is undisputed that Phelan cannot point to even one example of actual confusion. This factor, "actual confusion in the consuming public, is the most persuasive evidence in assessing likelihood of confusion." *Dantanna's*, 611 F.3d at 779. Phelan concedes that, despite four years of co-existence with widespread use of each parties' mark, there has not been a single instance of consumer confusion.

Phelan attempts to show that confusion is likely through a survey conducted by its survey expert, Rhonda Harper, who concluded that there was between 13% and 26% likelihood of confusion between the parties' use of their respective slogans. Harper's testimony and opinions, however, fail to create a genuine issue for the jury because Harper admitted that she did not test for reverse confusion. Curiously, although Phelan asserts only a reverse confusion claim, Harper testified that she tested for only forward confusion. Thus, nothing Harper presents is material to Phelan's claim.[6] This is significant because, in a reverse confusion case, it is appropriate to survey the senior user's customer base. *See Wreal LLC*, 2015 WL 12550932, at *15 ("As is appropriate when testing reverse confusion, Dr. Sarel surveyed potential users of [the plaintiff's] product"). As a forward confusion survey,

---

[6] For these same reasons, Bullington's testimony also fails to create a genuine issue for trial because, with respect to the element of confusion, Bullington relied on Harper's survey.

Harper solicited responses from the junior user's (RARE's) customer base, i.e., local residents of the Southwest Florida market area. However, Phelan's customer base, which should have been used, is comprised mostly of tourists to Southwest Florida, not residents of Southwest Florida.[7] Accordingly, this factor weighs in RARE's favor.

In sum, based on the Court's analysis of the seven factors, Phelan has failed to adduce sufficient evidence upon which a reasonable jury could find a likelihood of confusion between Phelan's and RARE's marks. Accordingly, RARE is entitled to summary judgment on all of Phelan's trademark claims, which also entitles RARE to summary judgment on Phelan's FDUTPA claim and Phelan's claim seeking cancellation of RARE's federal registration of its "You Can't Fake Steak" mark.

### B. Phelan's Dilution Claim

It appears that Phelan abandoned its Florida dilution claim because it failed to address this claim in its response. Nonetheless, this claim fails as a matter of law on the merits. With regard to dilution, Fla. Stat. § 495.151(1) "provides a cause of action for owners of marks that are 'famous in [Florida]' against defendants whose 'use of a mark or trade name . . . is

---

[7] Notably, if the Court were not granting summary judgment in RARE's favor, the Court would have struck Harper's survey under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) as unreliable, misleading, and unhelpful because, among other things, she failed to test Phelan's customer base. *See Valador, Inc. v. HTC Corp.*, Case No. 1:16-cv-1162, 2017 WL 1037589, at *6-*8 (E.D. Va. March 15, 2017) (excluding the plaintiff's survey expert in a reverse confusion case whose survey "was plainly the incorrect universe for a reverse confusion case. Indeed, [the expert's] surveying defendants' audience for reverse confusion would be akin to the government's counting heads in China for the U.S. Census. To obtain results pertinent to a reversion confusion claim, [the expert] should have surveyed [the plaintiff's] customers . . .").

likely to cause dilution of the distinctive quality of the famous mark.'" *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1267 (11th Cir. 2016).

Here, Phelan has not pointed to any evidence showing that its mark is sufficiently well known to sustain its dilution claim. To the contrary, Phelan now seems to argue that its mark is not well known. Accordingly, RARE is entitled to summary judgment on Phelan's dilution claim.

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendant's Motion for Summary Judgment (Dkt. 28) is granted.

2. The Clerk of Court is directed to enter final judgment in Defendant's favor and against Plaintiff.

3. Defendant's Motions to Strike (Dkts. 33, 34) are denied as moot.

4. After entry of judgment, the Clerk of Court is directed to close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on March 27, 2017.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record